UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

RICHARD P. HOBBS,                        :

                      Plaintiff,         :      10 Civ. 5717 (SHS)(HBP)

     -against-                           :
                                                REPORT AND
POLICE OFFICERS OF THE CITY              :      RECOMMENDATION
OF NEW YORK, et al.,
                                         :

                      Defendants.
                                         :
----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE SIDNEY H. STEIN, United States

District Judge,


I.   Introduction


          By notice of motion filed on or about June 26, 2013

(Docket Item 67), the New York City Police Department (the

"NYPD"), former Mayor Michael Bloomberg, former Police Commis-

sioner Raymond Kelly, the New York City Council Members (the

"Council Members") and the City of New York (the "City") move for

summary judgment dismissing the complaint.  Through a number of

documents styled as cross-motions and oppositions, plaintiff

Richard P. Hobbs opposes defendants' motion (Docket Items 72-74,

76-85[1]).  For the reasons set forth below, I respectfully recom-
mend that defendants' motion for summary judgment be granted in
part and denied in part.

II.  Facts

    A.  Background

        Plaintiff pro se commenced this action on July 23, 2010
(Docket Item 2) pursuant to 42 U.S.C. § 1983, alleging that the
defendants[2] infringed his right to freedom of speech.  The facts
underlying plaintiff's claims were set forth by the Honorable
Sidney H. Stein, United States District Judge, in his September
20, 2012 Order denying plaintiff's motions[3] for summary judgment:

---

[1]Plaintiff seeks non-dispositive relief in his various
cross-motions.  Because I have jurisdiction as a magistrate judge
to grant or deny non-dispositive motions, Mazur v. Olek Lejbzon &
Co., 05 Civ. 2194 (RMB)(DF), 2005 WL 3240472 at *2 n.1 (S.D.N.Y.
Nov. 30, 2005) (Freeman, M.J.); Patton v. Thompson Corp., 364 F.
Supp. 2d 263, 265-66 (E.D.N.Y. 2005), I address plaintiff's
motions separately in an Opinion and Order of even date.

[2]Specifically, plaintiff brings this action against the
"Police Officers of the City of New York," the City of New York,
"Michael Bloomberg, [former] Mayor of N[ew] Y[ork]," "the City
Council Members of New York" and the Head of the [NYPD]" (Docket
Item 2).

[3]Judge Stein construed both Docket Item 32, in which plain-
tiff sought an injunction, and Docket Item 41, in which plaintiff
sought damages, as motions for summary judgment (see Docket Item
52 at 1).

Plaintiff alleges that he works as a "busker," also known as a street performer.  In pretrial conferences and other proceedings, plaintiff describes his work as consisting primarily of appearing in public places in Manhattan to perform and pose for pictures; plaintiff wears extremely long, braided grey-white hair and presents a unique appearance.  Plaintiff claims that he engages passers-by in conversation, frequently about current events, and that after such conversations, the passers-by often seek to take a photograph with plaintiff.  Plaintiff generally agrees and seeks a cash contribution from the passer-by, and some oblige. Plaintiff does not provide photographs of himself or any other tangible product.  Nor does he provide a camera or any other equipment to be used in connection with the foregoing activity.

Plaintiff alleges that the New York City Police Department ("NYPD") regards the foregoing to constitute vending activity for which a "Certificate of Authority" to collect sales tax is required, and that the NYPD has arrested or threatened to arrest plaintiff and others for engaging in the foregoing activity without a Certificate.  The City agrees that, pursuant to New York State Tax Law Section 1817(a) and 1817(d)(1), no Certificate is required if, as plaintiff contends, he merely seeks a gratuity and does not sell a service or tangible property.  (Tr. of Conference dated Sept. 20, 2011 at 312-22; Dkt. No. 49.)  Plaintiff contends that, notwithstanding the parties' agreement on the law, members of the NYPD have threatened him with arrest for busking without a Certificate of Authority, and that defendants have thus criminalized constitutionally protected speech and chilled his First Amendment rights.

(Docket Item 52 at 1-2).

While this litigation was pending, on November 11, 2011, the City issued a directive to all NYPD Officers to clarify that plaintiff's conduct does not require a Certificate of Authority ("COA") (hereinafter, "November 2011 Directive") (Docket

3

Item 30).  The November 2011 Directive provides, in pertinent

part:

> Subject:  Enforcement of New York State Tax Law Section
> 1817(a) and 1817(d)(1)
>
> Effective immediately.  Members of the service are
> not to take enforcement action under the above sections
> of law, including arrest or the issuance of a summons,
> against persons engaged in the activity described below
> for failure to produce a New York State Department of
> Taxation and Finance Certificate of Authority to col-
> lect sales taxes (commonly referred to as a Tax
> Stamp)[.]
>
> Persons who appear in public places engaged in
> street performances are not engaged in a taxable event
> for which a Certificate is required if they merely pose
> for a photograph with passerby, and the passerby or
> their companion owns, and operates, the camera.  Under
> this scenario, the performer merely poses for the
> photograph and does not provide the camera or any other
> product of service.  Under this scenario, at some point
> in the interaction, the street performer, solicits, or
> is offered, a cash gratuity for posing for the photo-
> graph.  Such activity is not a taxable event and the
> individual is not required to possess a certificate of
> authority.  Persons engaged in the activity described
> above may not be issued a summons or arrested for
> failure to produce a Certificate of Authority under New
> York State Tax Law Sections 1817(a) or 1817(d)(1).
>
> Enforcement action should also not be taken under
> these sections of law wherein street performers, in-
> cluding individuals, such as, for example, costumed
> cartoon characters, musicians, mimes or other person[s]
> [are] engaged in similar activity where tangible prop-
> erty or a service is not provided and the actors are
> merely seeking a gratuity for posing for a photograph
> or conducting a performance in a public place.  Also,

persons engaged in these types of activities are <u>not</u> required to possess a NYC Department of Consumer Affairs General Vendors License.

However, activity similar to that described above wherein the street performer, costumed character, mime or musician sells tangible property, such as a recording of the performance, a photograph of the posed event, a souvenir, or other item, is a taxable event. As such, the seller is required to have a Certificate of Authority.  Violators may be issued a summons, returnable to criminal court, under New York State Tax Law Section 1817(a) for failure to possess a Certificate of Authority to collect sales taxes.

(Docket Item 30 at 1 (original text in upper-case; emphasis in original)).

Notwithstanding the NYPD's issuance of the November 2011 Directive, plaintiff moved for injunctive relief (Docket Item 32) and sought damages in connection with harms he purportedly suffered as a result of the NYPD's actions (Docket Item 41). In support of those motions, plaintiff alleged that in November and December of 2011 -- following the issuance of the November 2011 Directive -- plaintiff questioned police officers at various police stations, and was told by each officer he spoke with that busking activities must be accompanied by COAs (Docket Item 41 at 47).  Judge Stein denied both of plaintiff's motions as premature and found the record did not support granting summary judgment in plaintiff's favor (Order, dated September 20, 2012 (Docket Item 52), at 5-6).

Discovery was scheduled to close on March 31, 2013 (see Scheduling Order, dated October 12, 2012 (Docket Item 53); Order granting in part and denying in part Motion for Extension of Time, dated February 4, 2013 (Docket Item 56)).  Prior to that, the only discovery plaintiff sought was information related to other settlement agreements defendants had entered into (Docket Item 66 at 4).

On the eve of the discovery deadline, plaintiff moved to (1) amend his complaint to include, among other things, scores of new defendants (Motion to Amend Complaint, dated March 27, 2013 (Docket Item 57))[4] and (2) compel defendants to produce materials related to past settlement agreements (Motion to Compel, dated March 29, 2013 (Docket Item 58)).  I denied both motions on June 14, 2013, on the grounds that (1) granting leave to amend would be futile because the proposed amended complaint did not comply with Fed.R.Civ.P. 8(a)(2) and plaintiff sought to add defendants against whom plaintiff failed to state cognizable Section 1983 claims and (2) the information pertaining to defen-

---

[4]During a conference held on August 11, 2011, Judge Stein had informed plaintiff that he should amend his complaint to "be more specific," and noted that "the complaint as filed [was] imprecise" (Tr. of Conference, dated August 11, 2011 (Docket Item 27), at 12, 21).  Despite Judge Stein's admonition that any amended complaint contain greater factual detail, plaintiff waited approximately a year and a half before filing his motion to amend the complaint.

dants' settlement agreements with other plaintiffs was irrelevant to plaintiff's claims (Opinion and Order, dated June 14, 2013 (Docket Item 66)).

    B.    Plaintiff's
          Deposition

        Plaintiff testified at his deposition that he is a "busker" (Tr. of Deposition of Richard P. Hobbs, dated November 16, 2012 ("Hobbs Depo."), at 78, portions of which are annexed as Exhibit C to the Declaration of Nicholas Ciappetta, Assistant Corporation Counsel, dated June 26, 2013 (Docket Item 70) and annexed to Plaintiff's Opposition, dated July 3, 2013 (Docket Item 73)).  He stands on street corners in New York City, poses for photos and accepts tips/donations from passers-by in exchange for posing (Hobbs Depo. at 76).  Through his performances, plaintiff relays messages pertaining to his religious beliefs (Hobbs Depo. at 94-95, 125).[5]  Plaintiff testified that he nei

---

[5]Plaintiff has stated on other occasions that he also conveys political messages through his busking activities:

> I have made my living for most of my life as a professional busker, who is a person who uses public fora to transmit messages, usually containing some political point of view or some sort of addressive [sic] complaints against the government.  And I most certainly do and want to be able to have stood in the public fora and have had people take my pictures and both with or
> (continued...)

ther wants nor retains the contributions he receives for busking because the income would adversely affect his Social Security benefits (Hobbs Depo. at 109 ("Since I'm on this SSI, if I do get money I don't keep it. . . .   I'm on SSI.   I can't make money and I don't want to make money.")).

Plaintiff testified that he filed this lawsuit because the City maintains a policy of requiring buskers who receive gratuities to obtain COAs (Hobbs Depo. at 76).   However, the New York State Department of Taxation and Finance does not provide COAs for the type of activities in which plaintiff engages, i.e., busking, because they do not constitute taxable services (Hobbs Depo. at 76-77; see Docket Item 27 at 12-13).   Notwithstanding the fact that buskers are unable to obtain COAs, plaintiff testified that he witnessed the NYPD placing an individual under arrest for busking without a COA (Hobbs Depo. at 77-78).   Thereafter, plaintiff visited a police station seeking clarification on whether busking required a COA, and was told by the police officers at that station that he was not permitted to solicit funds for busking without a COA (Hobbs Depo. at 89-91).   The police officer also informed him that plaintiff could be arrested

---

[5](...continued)
        without remuneration.

(Docket Item 27 at 4; see also Docket Item 27 at 5-9).

8

for "aggressive panhandling" if he posted a sign, specifying the amount passers-by needed to pay for his service of posing for photos (Hobbs Depo. at 90-91).  Plaintiff testified that he has approached police officers on a number of occasions with this same inquiry but that "none of them [have] had the correct answer" (Hobbs Depo. at 91).

Having witnessed the arrest of a fellow busker and based on his conversations with police officers, plaintiff feared that his activities would lead to an arrest and, as a result, thereafter performed in "less public" or "less controversial" locations (Hobbs Depo. at 94; see also Hobbs Depo. at 115 ("[T]here's a lot of places I would like to do it [i.e., busk] and I don't do it because I'm afraid of being arrested."); Hobbs Depo. at 119-120 ("[I]f any officer talks about that [i.e., busking without a COA], then I realize I can't even think to busk in that area and I go somewhere else.").  He also testified that he felt "depressed or discouraged" at times because he could not busk in certain areas as a result of the defendants' actions (Hobbs Depo. at 94).  He concedes, however, that he has not stopped busking, and in fact, continues to busk daily (see Hobbs Depo. at 89, 94, 97, 103 ("I have not stopped busking.  I am a busker.  I busk every day")).

In addition, notwithstanding his allegations to the contrary, plaintiff testified that he has never been arrested or given a summons for failing to have a COA while busking:

> Q:    Have you ever been arrested for not having a Cer-
>        tificate of Authority while busking?
>
> A:    No.
>
> Q:    Have you ever been given a summons for not having
>        a Certificate of Authority while busking?
>
> A:    I've always asked what I needed and if they said I
>        needed it, I obeyed the police officer and didn't
>        do it.
>
> Q:    But have they given you a summons or a ticket for
>        not having one?
>
> A:    Well, if I don't, in their sight, break their
>        rules then they couldn't do that, could they?  And
>        they haven't.

(Hobbs Depo. at 118-19).

In fact, plaintiff could not recall ever having been asked by a police officer to present a COA while busking (Hobbs Depo. at 120).  However, he attributes this to the fact that he avoids busking in areas where he believes he could be arrested for busking without a COA:

> Q:    Has a police officer come up to you and asked you
>        to show them a Certificate of Authority while you
>        were busking?

A:    Given the fact that I've never busked anywhere
      where I felt the police officer might do that.  It
      hasn't happened.

(Hobbs Depo. at 120).

C.    The Present
      Motion

Defendants move for summary judgment on the following
grounds:  (1) the NYPD is not a suable entity; (2) plaintiff has
failed to allege facts sufficient to state claims against defen-
dants Raymond Kelly, former Commissioner of the NYPD, and Michael
Bloomberg, former Mayor of New York City in either their formal
or individual capacities; (3) plaintiff's claim against the
Council Members is "entirely without merit as there are no facts
in the Complaint to suggest that the City Council had ever the
slightest involvement with this matter"; (4) plaintiff has failed
to state a claim upon which relief can be granted and (5) plain-
tiff has failed to present any evidence establishing the City's
liability (Docket Item 68).

In response, plaintiff argues that his complaint should
not be dismissed because there is evidence that all of the
defendants were responsible for creating and enforcing an offi-
cial policy that required buskers to obtain COAs -- contrary to
New York State Tax Law Section 1817(a) and (d)(1) -- and the

11

policy had a chilling effect on his First Amendment rights (see Docket Items 72, 73, 77 and 85).  Specifically, plaintiff relies on defendants' answer to his complaint, statements made during conferences before Judge Stein, and his encounters with the NYPD as evidence of this official policy (see Docket Items 72, 73, 77 and 85).

III.  Analysis

    A.   Summary Judgment
         Standards

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there
> is no genuine issue as to any material fact and the
> moving party . . . is entitled to a judgment as a
> matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a
> motion for summary judgment, a court must resolve all
> ambiguities and draw all factual inferences in favor of
> the nonmoving party.  Anderson v. Liberty Lobby, Inc.,
> 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202
> (1986).  To grant the motion, the court must determine
> that there is no genuine issue of material fact to be
> tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23,
> 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine
> factual issue derives from the "evidence [being] such
> that a reasonable jury could return a verdict for the
> nonmoving party."  Anderson, 477 U.S. at 248, 106 S.Ct.
> 2505.  The nonmoving party cannot defeat summary judg-
> ment by "simply show[ing] that there is some metaphysi-
> cal doubt as to the material facts," Matsushita Elec.
> Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586,
> 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual
> argument based on "conjecture or surmise," Bryant v.

> Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The Su-
> preme Court teaches that "all that is required [from a
> nonmoving party] is that sufficient evidence supporting
> the claimed factual dispute be shown to require a jury
> or judge to resolve the parties' differing versions of
> the truth at trial." First Nat'l Bank of Ariz. v.
> Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575,
> 20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526
> U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).
> It is a settled rule that "[c]redibility assessments,
> choices between conflicting versions of the events, and
> the weighing of evidence are matters for the jury, not
> for the court on a motion for summary judgment."
> Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

"Material facts are those which 'might affect the out-come of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Coppola v. Bear Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007).  "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence pre-

sented[.]'"  Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778,
788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank,
81 F.3d 295, 298 (2d Cir. 1996).

     In the summary judgment context, where, as here, a
party is proceeding pro se, "the submissions of a pro se litigant
must be construed liberally and interpreted 'to raise the
strongest arguments they suggest.'"  Triestman v. Fed. Bureau of
Prisons, 470 F.3d 471, 474 (2d Cir. 2006), quoting Pabon v.
Wright, 459 F.3d 241, 248 (2d Cir. 2006); see also Haines v.
Kerner, 404 U.S. 519, 520 (1972); Graham v. Henderson, 89 F.3d
75, 79 (2d Cir. 1996); Burgos v. Hopkins, 14 F.3d 787, 790 (2d
Cir. 1994).

     B.   Application of the
          Foregoing Principles

     Plaintiff's claims arise under 42 U.S.C. § 1983, which
provides that:

          Every person who, under color of any statute,
          ordinance, regulation, custom, or usage, of any State
          . . . subjects, or causes to be subjected, any citizen
          of the United States or other person within the
          jurisdiction thereof to the deprivation of any rights,
          privileges, or immunities secured by the Constitution
          and laws, shall be liable to the party injured . . . .

In order to state a claim under Section 1983, a plaintiff must
allege two essential elements:  "(1) the conduct complained of

14

must have been committed by a person acting under color of state law, and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted); accord Jainity v. Sarway, 13-CV-0089 (ENV), 2013 WL 816216 at *2 (E.D.N.Y. Mar. 5, 2013); McAuliffe v. Pomposello, 10 Civ. 8721 (JSR), 2011 WL 4633867 at *3 (S.D.N.Y. Oct. 4, 2011) (Rakoff, D.J.), citing West v. Atkins, 487 U.S. 42, 48 (1988); Sullivan v. City of New York, 10 Civ. 0038 (NRB), 2011 WL 3806006 at *2 (S.D.N.Y. Aug. 29, 2011) (Buchwald, D.J.).  "To prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy." Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (inner quota-tion marks and citations omitted); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).

      1.   Claim Against
          the NYPD

At the outset, defendants argue that plaintiff's claims against the NYPD must be dismissed because that agency is not a

proper defendant under New York City Charter Chapter 17 Section 396 (1998), which provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."  Thus, it is well-settled that the NYPD is not a suable entity.  See Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("The district court correctly noted that the NYPD is a non-suable agency of the City."); McCoy v. NYPD 72nd Precinct, 13 Civ. 5247 (BMC)(LB), 2013 WL 5726177 at *2 (E.D.N.Y. Oct. 21, 2013) ("The police department and police precincts or subdivisions are not suable entities."); Justice v. City, State of New York, 13-CV-4016 (MKB), 2013 WL 4525699 at *2 (E.D.N.Y. Aug. 27, 2013) ("This provision [§ 396] has been construed to mean that the New York City Police Department ('NYPD') is not a suable entity."); Shine v. City of New York, 12 Civ. 8393 (CM), 2013 WL 5231472 at *3 (S.D.N.Y. July 24, 2013) (McMahon, D.J.) ("The New York City Police Department is an organizational subdivision of the City of New York, lacking independent legal existence and as such is not a suable entity.").  Accordingly, plaintiff's claims against the NYPD as a separate entity should be dismissed.

    2.   Claims Against
         <u>Bloomberg and Kelly</u>

         Defendants argue that former Mayor Bloomberg and former

Commissioner Kelly are also not proper defendants.  It is unclear

whether plaintiff is suing these defendants in their official or

personal capacities.  Although it appears based on plaintiff's

opposition papers that he intends to sue these defendants in

their individual capacities, <u>see</u> Docket Item 72 at 10 ("The mayor

& police chief were personally involved in the bringing about of

the ban on posing [<u>sic</u>]."); Docket Item 73 at 1 ("Bloomberg &

Kelly and prior holders of those jobs are personally involved in

as [<u>sic</u>] they created, enacted, promulgated, put into effect and

maintained it as law for well over ten years."), the issue is

moot because plaintiff's claims lack merit under either

interpretation.

         To the extent plaintiff is suing these individuals in

their official capacities, the claims are redundant and

duplicative of his claim against the City, and should, therefore,

be dismissed.  "The suit against the mayor and police chief in

their official capacities is essentially a suit against the City

of [New York], because in a suit against a public entity, naming

officials of the public entity in their official capacities

'add[s] nothing to the suit.'"  <u>Davis v. Stratton</u>, 360 F. App'x

                              17

182, 183 (2d Cir. 2010) (citation omitted); <u>accord</u> <u>Davis v. Town</u>
<u>of Hempstead</u>, CV 09-1129 (JFB)(ARL), 2013 WL 1623741 at *3
(E.D.N.Y. Feb. 6, 2013), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2013
WL 1623644 (E.D.N.Y. Apr. 15, 2013); <u>see</u> <u>also</u> <u>Coon v. Town of</u>
<u>Springfield, Vt.</u>, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983
suit against a municipal officer in his official capacity is
treated as an action against the municipality itself.").[6]

   To the extent that plaintiff is suing these defendants
individually, he fails to offer any evidence to demonstrate that
either defendant had any personal involvement with this case.
"It is well settled in this Circuit that 'personal involvement of
defendants in alleged constitutional deprivations is a
prerequisite to an award of damages under § 1983.'" <u>Wright v.</u>
<u>Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994), <u>quoting</u> <u>Moffitt v. Town</u>
<u>of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991); <u>accord</u> <u>Clark v.</u>
<u>Levesque</u>, 336 F. App'x 93, 94 (2d Cir. 2009); <u>Provost v. City of</u>
<u>Newburgh</u>, 262 F.3d 146, 154 (2d Cir. 2001); <u>Colon v. Coughlin</u>, 58
F.3d 865, 873 (2d Cir. 1995); <u>Maynard v. City of New York</u>, 13
Civ. 3412 (CM), 2013 WL 6667681 at *4 (S.D.N.Y. Dec. 17, 2013)
(McMahon, D.J.); <u>Kregler v. City of New York</u>, 08 Civ. 6893 (VM),
2013 WL 6620767 at *2 (S.D.N.Y. Dec. 9, 2013) (Marrero, D.J.).

_____

   [6]Plaintiff's claim against the City is addressed in Section
III.B.4 below.

> The personal involvement of a supervisory defendant may
> be shown by evidence that:  (1) the defendant
> participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of
> the violation through a report or appeal, failed to
> remedy the wrong, (3) the defendant created a policy or
> custom under which unconstitutional practices occurred,
> or allowed the continuance of such a policy or custom,
> (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or
> (5) the defendant exhibited deliberate indifference to
> the rights of [plaintiff] by failing to act on
> information indicating that unconstitutional acts were
> occurring.

Colon v. Coughlin, supra, 58 F.3d at 873 (citation omitted);

accord Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir.

2013); Jones v. Roosevelt Island Operating Corp., 13 Civ. 2226

(JSR), 2013 WL 6504428 at *4 (S.D.N.Y. Dec. 11, 2013) (Rakoff,

D.J.); Kregler v. City of New York, supra, 2013 WL 6620767 at *2;

see also Wright v. Smith, supra, 21 F.3d at 501.[7]

----

[7]Although it has not been formally overruled by the Second
Circuit, there is uncertainty as to whether all the Colon
categories survived the Supreme Court's decision in Ashcroft v.
Iqbal, 556 U.S. 662, 676 (2009).  See generally Zappulla v.
Fischer, 11 Civ. 6733 (JMF), 2013 WL 1387033 at *9-*10 (S.D.N.Y.
Apr. 5, 2013) (Furman, D.J.); D'Attore v. N.Y.C. Dep't of Corr.,
10 Civ. 815 (JSR)(MHD), 2012 WL 4493977 at *7 (S.D.N.Y. Sept. 27,
2012) (Dolinger, M.J.) (Report & Recommendation).  I need not
attempt to resolve that uncertainty here.  As explained in the
text, plaintiff offers no contentions and no evidence whatsoever
that could support a finding that Mayor Bloomberg or Commissioner
Kelly were personally involved in the constitutional violations
plaintiff alleges.  Thus, even if I assume that all the Colon
categories remain valid, Mayor Bloomberg and Commissioner Kelly
are still entitled to summary judgment.  Morrissette v. Cripps,
10 Civ. 8795 (JGK), 2011 WL 4089960 at *2 (S.D.N.Y. Sept. 14,
(continued...)

Here, plaintiff's complaint is devoid of any allegations as to former Mayor Bloomberg or Commissioner Kelly's personal involvement with this case (Docket Item 2).  In fact, other than naming the two in the caption of the complaint, plaintiff does not refer to either defendant in the body of the complaint (Docket Item 2).  "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'"  Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (Sweet, D.J.), quoting Morabito v. Blum, 528 F. Supp. 252, 262 (S.D.N.Y. 1981) (Ward, D.J.); accord Bernstein v. City of New York, 06 Civ. 895 (RMB), 2007 WL 1573910 at *10 (S.D.N.Y. May 24, 2007) (Berman, D.J.); Holloway v. Carey, 482 F. Supp. 551, 553 (S.D.N.Y. 1979) (Weinfeld, D.J.).

Furthermore, although plaintiff alleges in his opposition papers that these defendants were personally involved, those assertions are entirely conclusory and unaccompanied by any support from the record.  For example, plaintiff conclusively

---

[7](...continued)
2011) (Koeltl, D.J.) ("It is unnecessary, however, to explore the outer reaches of supervisor liability because the complaint fails to allege any supervisor involvement.").

states that "Bloomberg & Kelly and prior holders of those jobs
are personally involved in as [sic] they created, enacted,
pulmagated [sic], put into effect and maintained [an illegal
policy] as law for well over ten years negligently" (Docket Item
73 at 1).  Such bare allegations -- without more -- are
insufficient to defeat a motion for summary judgment.  See Pratt
v. Bloomberg, 11 Civ. 8355 (JGK), 2012 WL 1358770 at *2-*3
(S.D.N.Y. Apr. 19, 2012) (Koeltl, D.J.) (dismissing claims
against Mayor Bloomberg because the plaintiff did not allege
facts about the defendant's personal involvement); Perri v.
Bloomberg, 06-CV-403 (CBA)(LB), 2007 WL 2891332 at *9 (E.D.N.Y.
Sept. 28, 2007) (Plaintiff's failure to support his conclusory
allegations of personal involvement with facts, warranted the
dismissal of Section 1983 claims against Bloomberg and Kelly.);
Escobar v. City of New York, 05-cv-3030-ENV-CLP, 2007 WL 1827414
at *4 (E.D.N.Y. June 25, 2007) (granting motion to dismiss in
favor of, inter alia, Commissioner Kelly because plaintiff did
not plead any facts suggesting defendant's personal involvement
with the case); Younger v. City of New York, 480 F. Supp. 2d 723,
733 (S.D.N.Y. 2007) (Marrero, D.J.) (granting summary judgment in
favor of defendants Bloomberg and Kelly where plaintiff "merely
offer[ed] conclusory allegations that they failed to adequately
train, supervise, or discipline the police officer defendants;

. . . [and] that they failed to enforce the laws"); <u>Pravda v.
City of Albany</u>, 956 F. Supp. 174, 182 (N.D.N.Y. 1997) ("[C]on-
clusory allegations that Defendants [] were responsible for
supervising the officers involved in the alleged mistreatment,
and that they were responsible for setting County policy . . .
[were] insufficient to establish the[ir] personal involvement"
for Section 1983 claim.).

        Accordingly, because there is no evidence from which a
reasonable juror could find liability on the part of either of
these two defendants and because plaintiff has failed to properly
allege these defendants' personal involvement in the alleged
constitutional violation, plaintiff's claims against former Mayor
Bloomberg and former Commissioner Kelly should be dismissed.

             3.   Claims Against
                  <u>Council Members</u>

        Plaintiff's claims against the Council Members should
also be dismissed.  Although plaintiff includes the "City Council
Members" as defendants in the caption of the complaint, the body
of the complaint fails to state any facts alleging the City
Council's involvement with this matter (Docket Item 2).  <u>See
Bernstein v. City of N. Y.</u>, <u>supra</u>, 2007 WL 1573910 at *10; <u>Dove</u>

22

v. Fordham Univ., supra, 56 F. Supp. 2d at 335; Holloway v.
Carey, supra, 482 F. Supp. at 553.

    Moreover, plaintiff's allegation in the opposition
papers that the "City Council is responsible" for an "illegal and
immoral law" is entirely conclusory and unaccompanied by any
facts or support from the record (Docket Item 72 at 2, 4).  Even
if plaintiff had alleged his claims against the Council Members
with sufficient support from the record, they would still fail
because "[l]ocal legislators are entitled to absolute immunity
from § 1983 liability for their legislative activities."  Bogan
v. Scott-Harris, 523 U.S. 44, 54 (1998); accord Olma v. Collins,
499 F. App'x 98, 99 (2d Cir. 2012) ("State, regional, and local
legislators are entitled to absolute immunity from liability
under 42 U.S.C. § 1983 for official action undertaken in the
sphere of legitimate legislative activity." (inner quotation
marks and citations omitted)); Scheiner v. Bloomberg, 08 Civ.
9072 (SHS), 2009 WL 691449 at *2 (S.D.N.Y. Mar. 17, 2009) (Stein,
D.J.) ("Insofar as the complaint asserts section 1983 claims
against the Mayor and City Council members in their individual
capacities, those claims must be dismissed under the doctrine of
absolute legislative immunity.").

    Accordingly, I respectfully recommend that the claims
against the City Council be dismissed.

4.   Claim Against
     the City

          The only remaining claim is plaintiff's claim against

the City.  Plaintiff contends that the City has an official

policy of requiring buskers who receive cash gratuities in

exchange for posing for photos to obtain COAs and that this

policy infringes his First Amendment right.  Defendants, in turn,

argue that plaintiff has failed to state a First Amendment claim

upon which relief can be granted, and even if plaintiff could

show that the City violated a constitutional right, plaintiff

cannot demonstrate the existence of a policy or custom.

          In order to defeat defendants' motion, there must be

evidence sufficient to create a genuine dispute as to whether

plaintiff suffered a constitutional injury and whether the City

or a responsible official established a policy or custom that

caused that injury.  See Monell v. Dep't of Soc. Servs., supra,

436 U.S. at 690-91; Hartline v. Gallo, supra, 546 F.3d at 103.

          a.   Constitutional
               Injury

          Plaintiff argues that the City's actions had a chilling

effect on his busking activities.  "[C]onstitutional violations

may arise from the deterrent, or 'chilling' effect of

24

governmental regulations that fall short of a direct prohibition
against the exercise of First Amendment rights." Laird v. Tatum,
408 U.S. 1, 12-13 (1972); accord Hankard v. Town of Avon, 126
F.3d 418, 423 (2d Cir. 1997); Piscottano v. Town of Somers, 396
F. Supp. 2d 187, 206 (D. Conn. 2005).  "However, not every
assertion of a chilling effect will be considered a judicially
cognizable First Amendment violation." Levin v. Harleston, 966
F.2d 85, 89 (2d Cir. 1992).  As the Supreme Court of the United
States noted in Laird v. Tatum, "[a]llegations of a subjective
'chill' are not an adequate substitute for a claim of specific
present objective harm or a threat of specific future harm."  408
U.S. at 13-14; accord Zherka v. DiFiore, 412 F. App'x 345, 347
(2d Cir. 2011).  In other words, plaintiff must demonstrate that
"'defendant[s'] actions had some actual, non-speculative chilling
effect' on his speech." Williams v. Town of Greenburgh, 535 F.3d
71, 78 (2d Cir. 2008), quoting Colombo v. O'Connell, 310 F.3d
115, 117 (2d Cir. 2002) and Spear v. Town of W. Hartford, 954
F.2d 63, 67-68 (2d Cir. 1992); accord Tylicki v. Schwartz, 401 F.
App'x 603, 604 (2d Cir. 2010); Schubert v. City of Rye, 775 F.
Supp. 2d 689, 711 (S.D.N.Y. 2011) (Karas, D.J.); Molinari v.
Bloomberg, 596 F. Supp. 2d 546, 563 (E.D.N.Y. 2009); see also
Savoy of Newburgh, Inc. v. City of Newburgh, 657 F. Supp. 2d 437,
443 (S.D.N.Y. 2009) (Pauley, D.J.) ("Where a private citizen's

First Amendment Rights are violated, the harm that must be proved is a 'chilling effect' on the private citizen's speech.").

Moreover, "[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001), citing Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 120 (2d Cir. 1995) and Spear v. Town of W. Hartford, 954 F.2d 63, 67 (2d Cir. 1992). "Thus, plaintiff[] must make specific allegations that indicate a deprivation of [a] constitutional right[]; general, indirect and conclusory allegations are not sufficient." Hankard v. Town of Avon, supra, 126 F.3d at 423, citing Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987) and Koch v. Yunich, 533 F.2d 80, 85 (2d Cir. 1976).

Plaintiff's allegations of a "chilling effect" are sufficiently specific to demonstrate the existence of a triable issue of fact.  In his complaint, plaintiff alleges that police officers have informed him that he must acquire a COA in order to busk, despite the fact that New York State Tax Law Section 1817(a) and (d)(1) does not impose such a requirement on individuals, like plaintiff, who do not sell tangible goods or provide taxable services (Docket Item 2).  Plaintiff claims that he actually attempted to obtain a COA to comply with the

26

officers' directives, but the New York State Department of
Taxation and Finance informed him that he could not be granted a
COA for the type of activities in which he engages, i.e., busking
(Docket Item 27 at 12-13; Hobbs Depo. at 76-77).  Consequently,
plaintiff's only method of avoiding an arrest was to cease or
restrict his busking.

     Moreover, plaintiff testified that he witnessed police
officers arresting a "Russian man" for busking without a COA
(Hobbs Depo. at 77-78).  Indeed, Judge Stein observed during a
conference that it did appear "that he [i.e., the "Russian man"]
was arrested for not having a certificate of authority" (although
Judge Stein went on to note that the eventual "disposition ha[d]
nothing to do with not having a certificate of authority")
(Docket Item 27 at 19).  As a result of the City's actions,
plaintiff claims that his fear of being arrested for busking
without a COA led him to curb his busking activities.

     Although plaintiff conceded that he has continued to
busk despite his fear (Hobbs Depo. at 89, 94, 97, 103), he
testified that he restricts his busking activities to "less
public" areas so as to avoid the potential of an arrest (Hobbs
Depo. at 94, 115 ("[T]here's a lot of places I would like to do
it [i.e., busk] and I don't do it because I'm afraid of being
arrested."), 120, 125 ("In venues and in situations where the

issue of having the police come and arrest me for doing it [i.e., busk], I have to avoid that."). Plaintiff will ask police officers who are on patrol whether he needs a COA to busk; if the officers' responses indicate that plaintiff may be arrested for busking without a COA, plaintiff will leave that area and busk elsewhere (Hobbs Depo. at 117-20, 125). In addition, plaintiff testified that his conversations with police officers after the issuance of the November 2011 Directive reveal that police officers are continuing to adhere to the City's putative policy of requiring buskers to obtain COAs (Hobbs Depo. at 89-91; see also Docket Item 77).

Defendants' reliance on plaintiff's admission that he has never been arrested or summoned and continues to busk is misplaced (Docket Item 68 at 6-7). Plaintiff does not claim that the City's putative policy directly prohibits busking; rather, plaintiff argues that the City's actions had an "indirect effect on the exercise of [his] First Amendment rights." Laird v. Tatum, supra, 408 U.S. at 12-13. A claim asserting a First Amendment violation requires nothing more.

In light of plaintiff's testimony and his allegations, and drawing all reasonable inferences in favor of plaintiff, I conclude that an issue of fact exists as to whether the City's

28

actions impermissibly chilled plaintiff's busking activities.
See Sutera v. Schering Corp., 73 F.3d 13, 15-16 (2d Cir. 1995)
("In deciding a motion for summary judgment, 'the court cannot
try issues of fact but can only determine whether there are
issues of fact to be tried.'" (citation omitted); accord Escobar
v. City of New York, 766 F. Supp. 2d 415, 417 (E.D.N.Y. 2011).  A
reasonable juror could conclude that the City's putative policy
had a chilling effect on plaintiff's ability to busk.

                    b.    Injury Caused by
                          a Policy Or Custom

          Plaintiff must also demonstrate the existence of a
material factual dispute as to the City's liability under the
standard set forth in Monell v. Dep't of Soc. Servs., 436 U.S.
658 (1978) to sustain a Section 1983 claim.

> Under the standards of Monell v. Department of Social
> Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611
> (1978), a municipality can be held liable under Section
> 1983 if the deprivation of the plaintiff's rights under
> federal law is caused by a governmental custom, policy,
> or usage of the municipality.  Id. at 690-91, 98 S.Ct.
> 2018; see also Connick v. Thompson, --- U.S. ----, 131
> S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011)
> (municipalities can be held liable for "practices so
> persistent and widespread as to practically have the
> force of law").  Absent such a custom, policy, or
> usage, a municipality cannot be held liable on a
> respondeat superior basis for the tort of its employee.
> Monell, 436 U.S. at 691, 98 S.Ct. 2018; Connick, 131

> S.Ct. at 1359 (citing Monell, 436 U.S. at 691, 98 S.Ct.
> 2018); see also Bd. of Cnty. Comm'rs of Bryan Cnty.,
> Okla. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137
> L.Ed.2d 626 (1997) ("[I]t is not enough for a § 1983
> plaintiff merely to identify conduct properly
> attributable to the municipality. The plaintiff must
> also demonstrate that, through its deliberate conduct,
> the municipality was the 'moving force' behind the
> injury alleged.").
>
> Thus, isolated acts . . . by non-policymaking
> municipal employees are generally not sufficient to
> demonstrate a municipal custom, policy, or usage that
> would justify municipal liability. Villante v. Dep't.
> of Corr., 786 F.2d 516, 519 (2d Cir. 1986) (citing City
> of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct.
> 2427, 85 L.Ed.2d 791 (1985) (Brennan, J., concurring in
> part and concurring in the judgment)). On the other
> hand, such acts would justify liability of the
> municipality if, for example, they were done pursuant
> to municipal policy, or were sufficiently widespread
> and persistent to support a finding that they
> constituted a custom, policy, or usage of which
> supervisory authorities must have been aware, or if a
> municipal custom, policy, or usage would be inferred
> from evidence of deliberate indifference of supervisory
> officials to such abuses. See Amnesty Am. v. Town of
> W. Hartford, 361 F.3d 113, 125–26 (2d Cir. 2004).

Jones v. Town of E. Haven, 691 F.3d 72, 80-81 (2d Cir. 2012);

accord Matusick v. Erie Cnty. Water Auth., 739 F.3d 51, 82 (2d

Cir. 2014); see Phelan ex rel. Phelan v. Mullane, 512 F. App'x

88, 92 (2d Cir. 2013); Gray v. Grp. Home, 13-CV-4831 (SJF)(WDW),

2013 WL 5603293 at *3-*4 (E.D.N.Y. Oct. 10, 2013); Soba v. N.Y.C.

Hous. Auth., 11 Civ. 7430 (NRB), 2013 WL 3455449 at *4-*5

(S.D.N.Y. July 9, 2013) (Buchwald, D.J.).

30

> Monell established that alleging that a municipal
> policy or ordinance is itself unconstitutional is
> always sufficient to establish the necessary causal
> connection between the municipality and the
> constitutional deprivation, because an employee's act
> of enforcing an unconstitutional municipal policy may
> be considered the act of the municipality itself.  Id.
> at 694, 98 S.Ct. 2018; see also Pembaur v. City of Cin-
> cinnati, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 89
> L.Ed.2d 452 (1986).
>
>                    *     *     *
>
> Moreover, municipal liability does not lie only
> where the official policy or ordinance is itself
> unconstitutional.  See City of Canton, Ohio v. Harris,
> 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412
> (1989); Fiacco v. City of Rensselaer, New York, 783
> F.2d 319, 326 (2d Cir. 1986).  Where a city's official
> policy is constitutional, but the city causes its
> employees to apply it unconstitutionally, such that the
> unconstitutional application might itself be considered
> municipal policy, the city may be held liable for its
> employees' unconstitutional acts.

Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir.

2004).

Because the City issued a Directive in November 2011

clarifying its official policy while this case was pending, I

consider the time periods before and after the issuance of that

directive separately.

31

                            i.   Acts Pre-Dating
                                 the November
                                 <u>2011 Directive</u>


          Plaintiff argues that the City's official policy or

custom -- namely, requiring buskers who receive cash gratuities

in exchange for posing for photos to obtain COAs, contrary to the

requirements of New York State Tax Law Section 1817(a) and (d)(1)

-- is unconstitutional (Docket Item 2; <u>see</u> <u>also</u> Docket Item 72 at

1 ("The Complaint is about an absolute ban which the City of New

York has on all persons whereby in order to pose for a picture

and accept remuneration that person is first required to go to

the New York State Tax Department and apply for a Certificate of

Authority to Collect Sales Tax.").  Plaintiff offers the

following facts in support of his claim:  (1) defendants admitted

in their answer to the complaint that the busking activities

plaintiff complained of required a COA (Docket Item 85 at 7);

(2) Judge Stein commented at a conference that defendants' pos-

ition regarding the applicability of New York State Tax Law

Section 1817(a) and (d)(1) to buskers may be "wrong" (<u>see</u> Docket

Item 72 at 4; Docket Item 73 at 1; Docket Item 85 at 5); (3) nu-

merous police officers have informed him that he could be

arrested for busking without a COA (<u>see</u> Docket Item 2; Hobbs

                               32

Depo. 117-20, 125) and (4) plaintiff witnessed the NYPD arresting a "Russian man" for busking without a COA (see Hobbs Depo. at 77-78; Docket Item 72 at 8; Docket Item 74 at 1; Docket Item 83 at 6).  Defendants argue that plaintiff's reliance on the isolated acts of a few employees cannot establish liability for a municipality under Monell (Docket Item 68 at 10).

        Plaintiff has presented sufficient evidence to give rise to a genuine issue of a material fact.  Defendants, including the City, admitted in their answer to the complaint that "plaintiff [was] required to obtain a Certificate of Authority," which is precisely the policy/custom plaintiff must prove to prevail on his Section 1983 claim against the City (Answer, dated July 20, 2011 (Docket Item 14), at 2).  Defendants do not even address this admission in their motion papers.  This admission directly conflicts with defendants' position, taken on September 20, 2011 at a conference before Judge Stein:

> The Court:    The city's position is that, indeed, if you [i.e., plaintiff] are doing what you say you are doing there is no need for a certificate of authority.
>
>                 *    *    *
>
> The Court:    . . . Mr. Hobbs, what I hear Mr. Ciap[p]etta [defense counsel] saying is that indeed if you are not selling

33

anything <u>you</u> <u>don't</u> <u>need</u> <u>a</u> <u>certificate</u> <u>of</u>
<u>authority</u>.

(Docket Item 49 at 3, 4 (emphasis added)).

At the very least, defendants' admission in their
Answer creates a genuine issue of fact regarding the existence of
an official policy/custom preceding the issuance of the November
2011 Directive.

In addition to the admission, plaintiff has offered
evidence to support his claim that there was a widespread
practice among police officers of requiring buskers to obtain
COAs.  For example, plaintiff testified that he witnessed police
officers arresting an individual for busking without a COA (Hobbs
Depo. at 77-78; <u>see</u> Docket Item 72 at 8; Docket Item 74 at 1;
Docket Item 83 at 6; <u>see</u> <u>also</u> Docket Item 27 at 19).  He also
testified that he has spoken to numerous police officers who have
informed him that he could be arrested for busking without a COA
(Hobbs Depo. at 89-91, 117-20, 125, 130-31; <u>see</u> Docket Item 77).

In light of plaintiff's testimony and defendants'
admission in their Answer, a reasonable juror could conclude that
prior to the issuance of the November 2011 Directive, the City
had either a policy or custom of requiring buskers who were

34

merely posing for photos and receiving gratuities to obtain COAs.
Such a policy or custom could form the basis of a <u>Monell</u> claim.

Accordingly, I respectfully recommend that defendants'
motion for summary judgment as to plaintiff's Section 1983 claim
against the City for acts the City allegedly committed before
November 11, 2011 be denied.  <u>See</u> <u>Davis v. City of New York</u>, 10
Civ. 0699 (SAS), --- F. Supp. 2d ---, 2013 WL 1288176 at *9-*16
(S.D.N.Y. Mar. 28, 2013) (Scheindlin, D.J.) (fact issues
precluded district judge from granting City's motion for summary
judgment on <u>Monell</u> claim); <u>Media Alliance, Inc. v. Mirch</u>, 09-CV-
0659 (MAD/RFT), 2011 WL 3328532 at *13 (N.D.N.Y. Aug. 2, 2011)
(viewing the evidence in the light most favorable to plaintiffs,
there was sufficient evidence from which a reasonable juror could
conclude the City had a practice that infringed on plaintiff's
constitutional rights); <u>Savoy of Newburgh, Inc. v. City of
Newburgh</u>, <u>supra</u>, 657 F. Supp. 2d at 446-47 (existence of dispute
regarding material fact precluded granting defendants' motion for
summary judgment on claim of municipal liability for First
Amendment violation); <u>Tomaino v. Williams</u>, 05 CV 3916 (NGG)(WDW),
2007 WL 2743602 at *3 (E.D.N.Y. Sept. 18, 2007) (denying
defendants' motion for summary judgment on First Amendment claim

because reasonable juror could find that town had a policy of discrimination).

                        ii.  Acts Post-Dating
                            the November
                            2011 Directive

      Plaintiff has alleged that the City continued its putative policy past November 11, 2011.  The record is clear, however, that on November 11, 2011, the City issued a message to all NYPD members addressing the issue of whether buskers needed a COA; the City confirmed at that time that its official policy did not require buskers to obtain COAs (Docket Item 30).

      Nonetheless, plaintiff contends that, on at least two separate occasions, following the issuance of the November 2011 Directive, police officers informed him that he could be arrested for busking without a COA (see Hobbs Depo. at 89-91; Docket Item 77).  However, the isolated acts of a few employees -- standing alone -- do not demonstrate the existence of a municipal custom or policy.  See Villante v. Dep't. of Corr., 786 F.2d 516, 519 (2d Cir. 1986), citing City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985).  The law is well-settled that a municipality cannot be held liable on a respondeat superior basis for the acts of its employees that are not pursuant to a policy or custom.  Monell v.

36

Dep't Soc. Servs., supra, 436 U.S. at 691; accord Sorlucco v. New
York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) ("A
municipal agency may not be held liable under § 1983 simply for
the isolated unconstitutional acts of its employees."); see McKay
v. Vill. of Spring Valley, 12 Civ. 3077 (CS), 2013 WL 5745923 at
*4 (S.D.N.Y. Oct. 23, 2013) (Seibel, D.J.); Rodriguez v. City of
New York, 11 Civ. 2053 (RA), 2013 WL 3584834 at *4 (S.D.N.Y. July
15, 2013) (Abrams, D.J.); Tuminello v. Doe, 10 CV 1950
(DRH)(ARL), 2013 WL 1845532 at *4 (E.D.N.Y. Apr. 30, 2013).
Hence, without more, plaintiff cannot survive defendants' motion.

          Accordingly, because plaintiff relies solely on two
isolated incidents and the record is otherwise completely devoid
of any facts that could support a claim of an unconstitutional
City policy/custom past November 11, 2011, defendants' motion for
summary judgment on plaintiff's Monell claim against the City for
the time period following the issuance of the November 2011
Directive should be granted.


IV.  Conclusion

          For all the foregoing reasons, I respectfully recommend
that defendants' motion for summary judgment be partially
(1) granted as to plaintiff's claims against defendants the NYPD,

former Mayor Bloomberg, former Commissioner Kelly and the New
York City Council; (2) granted as to plaintiff's claim against
the City for acts that occurred after the issuance of the
November 2011 Directive and (3) dismissed as to plaintiff's claim
against the City for acts pre-dating the November 2011 Directive.

## V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Sidney H. Stein, United States District Judge, 500 Pearl Street,
Room 1010, New York, New York 10007 and to the Chambers of the
undersigned, 500 Pearl Street, Room 750, New York, New York
10007.  Any requests for an extension of time for filing
objections must be directed to Judge Stein.  FAILURE TO OBJECT
WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS
AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140,
155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d
Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049,
1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

38

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        February 6, 2014

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Mr. Richard P. Hobbs
Apt #6
1 Caryl Ave.
Yonkers, New York  10705

Nicholas R. Ciappetta, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York  10007